**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EVANS FANOR,<br><br>                  *Plaintiff*,<br><br>     v.<br><br>UNIVERSITY HOSPITAL-UMDNJ; JANE BLOMSTROM, individually and in her capacity as Absentee Coordinator for UNIVERSITY HOSPITAL<br><br>                  *Defendants*. | Civil Action No. 2:16-0320 (JMV) (ESK)<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

*Pro se* Plaintiff Evans Fanor asserts that his former employer violated his rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. He also asserts that the employer discriminated against him in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1 *et seq*. Presently before the Court is the motion of Defendants University Hospital-UMDNJ (the "Hospital") and Jane Blomstrom for summary judgment. D.E. 107. Plaintiff filed a brief in opposition, D.E. 109, to which Defendants replied, D.E. 115.[1] The Court reviewed all submissions made in support and in opposition to the motion and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendants' motion is **GRANTED**.

---

[1] Defendants' brief in support of their motion for summary judgment is referred to as "Def. Br." (D.E. 135-1); Plaintiff's brief in opposition is referred to as "Plf. Opp." (D.E. 136); and Defendants' reply brief is referred to as "Def. Reply" (D.E. 137).

1

I. **FACTUAL AND PROCEDURAL BACKGROUND**[2]

Plaintiff began working as a patient advocate at the Hospital in 2003. PSSOMF ¶ 1. Due to prior leg surgeries, Plaintiff used a walker to perform his job duties since 2009.[3] *Id.* ¶ 6. On June 20, 2013, he was assaulted in the waiting area of the emergency room. DSOMF ¶ 5. As a result of this attack, Plaintiff suffered a patella tendon injury. DSOMF ¶ 6.[4] Plaintiff was scheduled to undergo surgery on August 26, 2013. *Id.* The surgery did not occur, however, because Plaintiff's blood sugar was too high to allow for a safe procedure. *Id.* In order to control his blood sugar, Plaintiff sought medical leave in early November 2013. PSSOMF ¶ 4. Specifically, he applied for leave pursuant to the FMLA for the period November 4, 2013 through April 1, 2014. DSOMF ¶ 7. No decision was ever reached on that application. DSOMF ¶ 8. According to the Defendants, the reason that it did not address the application is because on November 11, 2013 Plaintiff's physician, Dr. Lind, sent a letter to the Hospital's Leave of Absence Coordinator, Defendant Blomstrom. DSOMF ¶ 8. This letter requested that the period of leave be changed from the original dates, to January 2, 2014 through May 30, 2014. *Id.* Plaintiff

---

[2] The background facts are drawn from Defendants' Statement of Undisputed Material Facts ("DSOMF"), D.E. 98-1, as well as a letter from Plaintiff serving as a supplemental statement of material facts ("PSSOMF"), D.E. 102. Plaintiff did not submit a responsive statement of material facts or include numbered paragraphs. The Court, nonetheless, construes submissions by *pro se* plaintiffs liberally. As a result, the numbered paragraphs referred to in PSSOMF were included by the Court in consecutive fashion for ease of reference. Additional facts are drawn from the declaration of Defendants' counsel ("Lyons Decl."), D.E. 107-2, which includes Plaintiff's deposition testimony ("Fanor Dep."), Lyons Decl., Ex. C.

[3] Fanor indicated that he invoked the FMLA in 2009.

[4] Plaintiff indicates that he was attacked by a Kevin Bacote, a homeless person who had previously been incarcerated for manslaughter. PSSOMF ¶ 2. As a result of the assault, Plaintiff testified before a grand jury pursuant to subpoena. *Id.* ¶ 3. Plaintiff appears to claim that the Hospital retaliated against Plaintiff due to his cooperation with law enforcement following the attack but fails to provide any supporting evidence or attribute any plausible motive to the Hospital for doing so.

confirmed this change via facsimile on December 9, 2013. DSOMF ¶ 9.

Plaintiff did not report to work from November 19, 2013 through January 2, 2014. DSOMF ¶ 10. In accordance with the Hospital's attendance policy, Plaintiff submitted a note on December 18, 2013 from another physician, Dr. Orellama, indicating that Plaintiff was receiving treatment for diabetes mellitus and bronchitis. DSOMF ¶ 11. The letter indicated that Plaintiff was only unable to work on the day of December 18. *Id.* Blomstrom sent Plaintiff a letter informing him that although he was absent from work since November 19, 2013, his doctor's note only covered the day of December 18. DSOMF ¶ 12. This letter also indicated that Plaintiff was expected to return to work or provide certain specified documentation regarding his absence. *Id.* The letter made clear that the documents must be received by January 3, 2014. *Id.*[5]

Plaintiff returned to work on January 3, 2014, and provided his supervisor, Patricia Rondan-Mann, with the December 18, 2013 note from Dr. Orellama. DSOMF ¶ 13. Plaintiff did not provide any additional documentation. DSOMF ¶ 14. Following work that day, Plaintiff slipped and fell outside of the Hospital. DSOMF ¶ 15. From January 7, 2014 through January 23, 2014, he was absent from work and did not contact the Hospital regarding these absences. DSOMF ¶ 16. The Hospital's attendance policy requires an employee to call his or her supervisor every day during a period of absence. *Id.* On January 23, 2014, Plaintiff called Rondan-Mann and informed her he would be discharged from a physical rehabilitation facility that day. DSOMF ¶ 17. On January 28, 2014, Rondan-Mann sent Plaintiff a termination letter effective the day prior,

---

[5] Plaintiff indicates that after he applied for FMLA leave in November, Defendant Blomstrom "changed the specification of the filed FMLA request form close to ten times." PSSOMF ¶ 11. Eventually, at Plaintiff's request, Dr. Lind spoke with Blomstrom over the phone to understand the changes that she was requesting with respect to the application. *Id.* As discussed herein, this dispute is immaterial because Plaintiff ultimately asserts that he was entitled to FMLA at a later period.

3

basing the termination on his violation of the attendance policy and failure to provide documentation supporting his absence between November 19, 2013 and January 2, 2014, with the exception of December 18, 2013. DSOMF ¶ 18.

Plaintiff does not materially dispute the events of January 3, 2014 or thereafter with the exception of reporting in regularly. But Plaintiff does provide additional details. After he received Blomstrom's letter instructing him to return to work, Plaintiff did so on January 3, 2014, in the midst of a snowstorm. PSSOMF ¶ 7. While leaving work, he slipped and fell, resulting in emergency back surgery the following day. PSSOMF ¶ 8. Each day thereafter, Plaintiff called either Olivia Davis, an employee at the hospital, or Rondan-Mann to update them on his treatment. PSSOMF ¶ 9. Plaintiff intended, along with his back surgeon, to file a new FMLA form sometime after January 27, 2014, but Plaintiff was terminated before the form was filed. PSSOMF ¶¶ 13, 15.

Plaintiff also notes that upon termination, he applied for short-term disability benefits. PSSOMF ¶ 16. Benefits were denied because the Hospital reported that plaintiff had violated the attendance policy, was a no-call/no-show, and exhibited severe misconduct. *Id.* Plaintiff appealed the decision to an "Appeal Tribunal," which concluded that he did not violate the attendance policy or exhibit misconduct. *Id.* ¶ 19. The Hospital did not appeal this decision. *Id.* ¶ 20.[6]

Plaintiff filed suit on January 15, 2016, alleging violations of the FMLA, employment discrimination, and intentional infliction of emotional distress. D.E. 1. The intentional infliction of emotional distress claim was dismissed on August 29, 2016. D.E. 19. On November 1, 2019, Defendants were granted leave to file a motion for summary judgment. D.E. 101. The current

---

[6] Plaintiff further indicates that, apparently through labor negotiations, he was offered to be rehired to his position later in 2014. Plaintiff, however, indicates that he could not pass the required physical due to his back injury.

motion followed.

## II.     SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at

250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

### III.  ANALYSIS

#### A.  FMLA Claims

The FMLA typically provides two avenues for recovery: a claim for interfering with the exercise of FMLA rights and a claim for retaliatory action against an individual exercising his or her rights. *See Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F. 3d 294, 301 (3d Cir. 2012). Plaintiff, who is proceeding *pro se*, does not expressly delineate his FMLA claim as applying to either category. Still, the Court, as well as Defendants, construe the pleadings and briefs as implying both an interference and a retaliation claim.

##### 1.  FMLA Interference Claim

The FMLA provides that it "shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right" guaranteed by the act. 29 U.S.C. § 2615(a)(1). The act entitles an eligible employee up to twelve work weeks of leave during a twelve-month period when the employee has a serious health condition rendering him unable to perform the functions of his position. 29 U.S.C. § 2612(a). A plaintiff must establish the following for an interference claim:

> (1) [H]e or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3)

> the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

*Ross v. Gilhuly*, 755 F. 3d 185, 192 (3d Cir. 2014) (quoting *Johnson v. Cmty. Coll. Of Allegheny Cnty.*, 566 F. Supp. 2d 405, 446 (W.D. Pa. 2008)).[7]

There appear to be three separate instances in which Plaintiff sought to take FMLA leave: (1) November 4, 2013 to April 1, 2013 ("November 2013 Request"); (2) January 2, 2014 to May 30, 2014 (January 2014 Request); and (3) January/February 2014 to an unstated date ("2nd January Request"). The parties agree that Plaintiff originally sought the November 2013 Request period. The parties also agree that Plaintiff amended this first period to the January 2014 Request period. As to the 2nd January Request period, Plaintiff admits that he never filed the request (from his back surgeon) because he had already been fired. Defendants argue only as to the November 2013 Request, while Plaintiff focuses on the 2nd January Request.

Plaintiff was indisputably absent from work from November 19, 2013 through January 2, 2014. Defendants argue that any claim of interference or entitlement fails because "Plaintiff cannot show that he requested FMLA leave to cover his absences and that a requested leave was denied." Def. Br. at 6. Although Plaintiff did initially request leave, his physician subsequently changed the dates of his request such that FMLA leave would not begin until January 2, 2014. Plaintiff himself confirmed this change via facsimile. In other words, there was no interference as to his November 2013 Request because the request was retracted and amended to a later date.

---

[7] The record does not indicate why Plaintiff needed to take FMLA to address his blood sugar issue. An eligible employee may be entitled to FMLA leave because "of a serious health condition that makes the employee unable to perform the functions of the position of such employee[.]" 29 U.S.C. § 2612(a)(1)(D). However, the Court does not address the issue because the parties do not.

7

Plaintiff does not dispute the fact that his physician changed his leave request or that he confirmed the change. Thus, there is no genuine dispute of material fact, and Defendants are entitled to summary judgment as to the November 2013 Request period.[8]

Plaintiff does not argue that he was in fact entitled to take leave prior to January 2, 2014. Moreover, Plaintiff's references to leave during this period are inconsistent. In his opposition brief, Plaintiff explains that "[o]n November/December 2013 plaintiff experienced anxiety attacks due to the assault that plaintiff suffered in the Emergency Room on June 20, 2013." Plf. Opp. at 1. He further states that "[d]ue to the anxiety attacks, Plaintiff informed his supervisor, Patricia Rondan-Mann, that it was plaintiff's intentions of using his sick time due to his anxiety ailments." *Id.* However, Plaintiff later states in his brief that "[p]rior to the [s]lipped and fell (sic) incident of January 3, 2014, plaintiff was supposed to be on leave to better control his diabetes." *Id.* at 4.

Moreover, despite stating that he was "supposed to be on leave," Plaintiff does not address the fact that he had changed his FMLA request to cover a later date. Nor does he provide any evidence that Blomstrom's allegedly continuous refusal to approve his FMLA request was

---

[8] At the same time, Defendants' cited cases (Def. Br. at 7) in support are inapposite. The first involved a plaintiff who "explicitly requested *not* to take FMLA-designated leave and instead asked if management would accommodate him with an informal, flexible scheduling arrangement." *Gravel v. Costco Wholesale Corp.*, 230 F. Supp. 3d 430, 437 (E.D. Pa. 2017) (emphasis in original). The same explicit waiver is true of the employee in *In re Twp. of Parsippany-Troy Hills*, 419 N.J. Super 512, 523 (App. Div. 2011) ("Here, the employee unequivocally waived his FMLA rights when he told the [employer] he did not wish to take FMLA leave."). Here, by comparison, Plaintiff never indicated that he did not want to take FMLA leave or that he waiving his rights thereunder.

unlawful[9] interference.[10]

As noted, Plaintiff's primary argument concerning FMLA interference pertains to the 2nd January Request period. Plaintiff has not established, however, that he had successfully invoked his FMLA rights following the slip and fall. On the contrary, Plaintiff states that his doctor was in the process of filling out his FMLA paperwork to enable Plaintiff to go on leave when he was terminated. Plf. Opp. at 2-3.

In addition, Plaintiff's argument is not that Defendants interfered with his FMLA leave, but that they falsely stated he was being terminated for failing to call in after missing work due to his accident. Plf. Opp. at 3. That may be so, but Plaintiff does not explain how it has any bearing

---

[9] Depending on the reason for the leave, an employer can request that an employee provide sufficient documentation in support of the request:

> (a) In general
> An employer may require that a request for leave under subparagraph (C) or (D) of paragraph (1) or paragraph (3) of section 2612(a) of this title be supported by a certification issued by the health care provider of the eligible employee . . . . The employee shall provide, in a timely manner, a copy of such certification to the employer.
>
> (b) Sufficient certification
> Certification provided under subsection (a) shall be sufficient if it states--
>    (1) the date on which the serious health condition commenced;
>    (2) the probable duration of the condition;
>    (3) the appropriate medical facts within the knowledge of the health care provider regarding the condition;
>    (4) . . .
>       (B) for purposes of leave under section 2612(a)(1)(D) of this title, a statement that the employee is unable to perform the functions of the position of the employ[.]

29 U.S.C. § 2613(a)-(b).

[10] Plaintiff does state that Blomstrom exhibited a lack of professionalism and lack of guidance in helping him successfully complete his FMLA form during this period, and that he reported her to her supervisor. PSSOMF ¶ 11.

9

on whether he was denied FMLA benefits to which he was entitled. Plaintiff was terminated prior to whenever this leave might have begun according to his argument. "In the context of an interference claim, '[n]o FMLA violation occurs where an employer has already decided to terminate the employee before the employee requests FMLA leave.'" *Atchison v. Sears*, 666 F. Supp. 2d 477, 489 (E.D. Pa. 2009) (quoting *Reinhart v. Mineral Techs. Inc.*, No. 05-4203, 2006 WL 4050695, at *13 (E.D. Pa. Nov. 27, 2006)).

One *possible* interpretation of Plaintiff's argument is that Defendants interfered with his FMLA rights by firing him while he was in the process of applying for leave. *See Erdman v. Nationwide Ins. Co.*, 582 F. 3d 500, 509 (3d Cir. 2009). In this sense, the Court can consider the interference claim as a retaliation claim. *See Atchison*, 66 F. Supp. 2d at 489 ("In this case, Atchison's interference claim is identical to his retaliation claim, and premised on the same allegation that Sears took adverse employment action against him because he requested FMLA leave. . . . Thus, Atchison's FMLA violation allegations should be analyzed as a retaliation claim."). But Plaintiff does not make this argument.

As for Plaintiff's FMLA interference claim, there is no genuine dispute of material fact, and Defendants have demonstrated that they are entitled to judgment as a matter of law. Summary judgment as to the interference claim is accordingly granted.

### 2. FMLA Retaliation Claim

Defendants argue that Plaintiff's retaliation claim must fail because he has not shown any evidence that he was discriminated against because he sought to exercise his FMLA rights. "To succeed on an FMLA retaliation claim, a plaintiff must show that (1) he invoked his right to FMLA-qualifying leave, (2) he suffered an adverse employment decision, and (3) the adverse action was causally related to his invocation of rights." *Ross*, 755 F. 3d at 193 (quoting

*Lichtenstein*, 691 F. 3d at 302).  Further, "[b]ecause FMLA retaliation claims require proof of the employer's retaliatory intent, courts have assessed these claims through the lens of employment discrimination law.  Accordingly, claims based on circumstantial evidence have been assessed under the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)[.]"  *Lichtenstein*, 691 F. 3d at 302.  Pursuant to the *McDonnell Douglas* framework, a plaintiff must first demonstrate "a prima facie case of discrimination.  If the plaintiff succeeds, the defendant must articulate a legitimate, non-discriminatory reason for the adverse employment action.  The burden then shifts back to the plaintiff to prove, by a preponderance of the evidence, that the articulated reason was a mere pretext for discrimination."  *Ross*, 755 F. 3d at 193 (citing *Keller v. Orix Credit Alliance, Inc.*, 130 F. 3d 1101, 1108 (3d Cir. 1997)) (internal citations omitted).  "[T]he non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence[.]"  *Fuentes v. Perskie*, 32 F. 3d 759, 765 (3d Cir. 1994) (quotations omitted) (emphasis in original).

Defendants do not dispute that Plaintiff has raised a prima facie case.  Instead, they highlight the lack of evidence of intentional discrimination and offer a non-discriminatory explanation for Plaintiff's termination—the fact that he was absent from work without excuse from November 19, 2013 through January 2, 2014.  Those absences were unexcused and in violation of the Hospital's attendance policy.  The attendance policy requires staff members to provide proof of illness from their personal physician stating the nature of the illness and the anticipated date of return when the absence is more than two days.  DSOMF ¶ 10.  In response to this policy, Plaintiff submitted a note from Dr. Orellama dated December 18, 2013.  *Id.* ¶ 11.  The letter, however, only indicated that Plaintiff was under the doctor's care for the day of December 18, 2013.  *Id.*

Blomstrom then sent Plaintiff a letter dated December 23, 2013, indicating her understanding that the note only covered a single day and requesting further documentation. *Id.* ¶ 12. It stated that Plaintiff would have to return to work by January 3, 2014 or provide additional documentation; if not, he would be considered to have voluntarily resigned. *Id.* Plaintiff returned to work on January 3, 2014 and provided the same note from Dr. Orellama to his supervisor. *Id.* ¶ 13.

Later, after his slip and fall incident, Plaintiff failed to call in to the Hospital regarding any of his absences, despite the fact that the attendance control policy requires staff to call in to a supervisor each day of absence. *Id.* ¶ 16. Plaintiff was then terminated for two reasons: (1) his failure to report to work from November 19, 2013 through January 2, 2014 (excepting December 18, 2013) and (2) failing to call in his absence or provide documentation between January 7, 2014 and January 23, 2014. *Id.* ¶ 18.

Since Defendants have articulated a legitimate, non-discriminatory explanation, the burden shifts to Plaintiff to demonstrate that this explanation is a pretext for discrimination. As to the first reason, he claims that he believed he was complying with Blomstrom's request when he arrived for work on January 3, 2014 and handed in Dr. Orellama's note to his supervisor, Rondan-Mann. *Id.* ¶ 10. In Plaintiff's view, if his supervisor had a problem with the sufficiency of the documentation, she should have informed Plaintiff of that at the time. *Id.* As to the second reason, he stated in his deposition that he did in fact call in every day. PSSOMF ¶ 9.

The Court agrees that Plaintiff has raised a genuine dispute of material fact as to the second reason. His deposition testimony is sufficient evidence that he did call in. The absence of telephone records is not, as Defendants seem to suggest, dispositive. Additionally, Plaintiff puts forth evidence from the Appeal Tribunal relating to that period. Because he was terminated for being a no call, no show, he was initially ineligible for certain unemployment benefits. Plaintiff

12

successfully appealed an initial decision finding in the Hospital's favor. D.E. 102-1 at 61. This decision of the Appeal Tribunal discussed the circumstances surrounding the injury on January 3, 2014 and thereafter. *Id.* The Appeal Tribunal ultimately concluded that Plaintiff "was not discharged for simple or severe misconduct connected with the work."[11] D.E. 102-1 at 62. Plaintiff also provides a letter from the surgeon who treated Plaintiff following his slip and fall, which states that the doctor contacted Rondan-Mann on January 6, 2014. D.E. 102-1 at 63. Insofar as his termination was based on his failure to call in after his slip and fall accident, Plaintiff has pointed to sufficient evidence that a jury could credit to find Defendants' explanation unworthy of credence.

---

[11] This conclusion is limited, however, by the fact that only Plaintiff submitted evidence to the Appeal Tribunal, and does not seem to have included the fact that he was absent from November 19, 2013 through January 2, 2014 as well. As the Appeal Tribunal stated:

> In this case, there is only the sworn and uncontested testimony of the claimant. The claimant was discharged from the job for violation of the attendance policy, specifically for incidents of no call, no show. The claimant denies the allegation. Evidence provided during the hearing established that the employer was aware that the claimant was incapacitated and under doctor care for his injury. The claimant's testimony is accepted in this matter in light of any opposing testimony. As there is no evidence to demonstrate that the claimant violated an employer rule or engaged in behavior that was not in the best employer's best interest [sic], his termination cannot be viewed as misconduct connected with the work. Although the claimant received a prior written warning for lateness to work, this appeals Tribunal does not view the final incident that resulted in his termination to be consistent with the prior warning. Therefore, no disqualification arises under NJ.S.A. 43:21-5(b), as the claimant was not discharged for simple or severe misconduct connected with the work.

D.E. 102-1 at 61. This is only evidence, therefore, that Plaintiff did call in after his slip and fall accident, not that his termination in general was unjustified. Plaintiff does not, for instance, argue that Defendants are estopped from claiming his termination was justified on the basis of his Appeal Tribunal decision.

Defendants in reply focus their attention on the period from November 19, 2013 through January 2, 2014. For that period, they assert that Plaintiff has not rebutted their evidence. He was indisputably absent and did not comply with the attendance policy. Def. Reply Br. at 7. The Court agrees that Plaintiff has not raised a genuine dispute as to those facts.

Blomstrom's letter of December 23, 2013 stated that Plaintiff had not submitted any medical documentation, other than the December 18 letter from Dr. Orellama, that supported his "current" absence, *i.e.*, from November 19, 2013 to December 23, 2013. Next, it said that Plaintiff is "advised that [he is] expected to return to work or provide a Certification of Healthcare Provider Form completed by your treating physician, as well as a Request for Leave of Absence Form completed by [him.] These documents must be received by [Blomstrom] *no later than January 03, 2014.*" Lyons Decl., Ex. L (emphasis in original). Blomstrom's letter pointed out the that the December 18 letter was insufficient. Yet, Blomstrom also provided Plaintiff with the opportunity to cure the deficiency by returning to work or submitting additional information. Plaintiff's explanation – that he thought the burden should have been on Rondan-Mann to tell him that his documentation was insufficient – runs directly contrary to the warning in the letter, that is, the December 18 letter was inadequate.

Plaintiff has also not provided any evidence that Defendants retaliated against him beyond his own speculation. In his brief, he states that his termination was retaliatory because Defendants "thought that plaintiff tarnished University Hospital's image by filing charges against Kevin Bacote who physically assaulted me in the Emergency Room Waiting Area." Plf. Opp. at 3. Without evidence, however, the arguments cannot prevent summary judgment from being granted. More importantly, Plaintiff's explanation – even if credited – does not reflect retaliation vis-à-vis an FMLA request.

Plaintiff, therefore, fails to establish that Defendants' nondiscriminatory reason for termination based on the November 2013 Leave period was a pretext. Summary judgment is accordingly granted in favor of Defendants as to the FMLA retaliation claim.

## B. NJLAD Claims

Plaintiff brings two claims under the NJLAD: "Handicap Discrimination" and "Perceived Handicap Discrimination."[12] Complaint, D.E. 1, ¶¶ 54-59. Defendants argue that summary judgment must be entered against these claims for the same reasons as for the FMLA retaliation claim.

The NJLAD prevents unlawful discrimination and employment practices against individuals on the basis of disability. N.J. Sta. Ann. § 10:5-4.1. "The elements for proving disability discrimination under the NJLAD are similar to that under the FMLA." *Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 235 (D.N.J. 2015). Additionally, the *McDonnell Douglas* burden shifting framework applies. *Id.* at 236 (citing *Schummer v. Black Bear Dist. LLC*, 965 F. Supp. 2d 493, 501 (D.N.J. 2013)).

Here, again, Defendants argue that once they have articulated a legitimate, non-discriminatory reason for termination, the burden shifts to Plaintiff to prove discrimination by a preponderance of the evidence. As discussed above, Defendants have articulated a legitimate, non-discriminatory explanation for termination. Plaintiff does not provide any evidence that this explanation was a mere pretext.

---

[12] In his opposition brief, Plaintiff also appears to add a retaliation claim pursuant to the NJLAD. Defendants argue that this is impermissible. In any event, they argue, a retaliation claim fails for the same reason as the other NJLAD claims: Plaintiff has not met his burden of demonstrating that Defendants' explanation for termination was pretextual. The Court agrees that new claims cannot be raised in a summary judgment brief. Because Plaintiff is proceeding *pro se*, the Court construes his arguments labeled "retaliation" as applying to his other NJLAD claims.

Plaintiff's theory of discrimination is based on his belief that the Hospital decided he had tarnished its reputation.[13] *See* Plf. Opp. at 8. Even if, as Plaintiff argues, his participation in a protected activity and termination thereafter can lead to an inference of causation, he has not provided any evidence that Defendants' explanation is a pretext. In contrast stand the cases cited by Plaintiff. *See Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F. 2d 1307, 1316 (7th Cir. 1989) (regarding an employer who argued that plaintiff's job could not be preserved during maternity leave because her workload was too heavy for a temporary employee, but plaintiff offered deposition testimony and affidavits that her workload did not increase between the time she was ensured her job would remain open and when her employer changed its mind); *Jackson v. Univ. of Pittsburgh*, 826 F. 2d 230, 234 (3d Cir. 1987) (concerning employer who argued that the plaintiff was dismissed for performance deficiencies, but plaintiff offered deposition testimony that his employer had never complained about his work performance); *Bennun v. Rutgers*, 737 F. Supp. 139, 1408 (D.N.J. 1990) (addressing employer who argued that plaintiff was not promoted due to quality of research, but plaintiff provided peer review letters stating he had made significant contributions).

Plaintiff has not challenged Defendants' evidence that he was absent from November 19, 2013 through January 3, 2014 in violation of the attendance policy (with the exception of December 18, 2013). He therefore has not met his burden of citing to sufficient evidence that demonstrates Defendants' proffered explanation for his termination is a pretext for discrimination.

---

[13] Plaintiff also argues that he was terminated because he engaged in a protected activity — testifying in front of the grand jury regarding his assault by the homeless individual. Plf. Opp. at 8. The NJLAD offers protection from discriminatory action on the basis of disability, or, as Plaintiff has formulated it, handicap or perceived handicap. Testifying in front of a grand jury is not protected by the NJLAD. Moreover, as discussed in note 3, Plaintiff fails to provide any supporting evidence or attribute any plausible motive to the Hospital for doing so.

16

Summary judgment is accordingly granted in favor of Defendants as to Plaintiff's NJLAD claims.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment, D.E. 107, is **GRANTED**. An appropriate Order accompanies this Opinion.

Dated: November 25, 2020

_____
John Michael Vazquez, U.S.D.J.